On January 22, 1942, Rimbolt Finance Service, Inc., agreed to make a loan of $300 to Joseph F. Bowen and McIlvane Duggan. Bowen signed a borrower's statement and also a note and the Finance Company issued its check on National Bank of Commerce for $300, payable to Bowen, and shortly thereafter delivered the said check to Duggan.
On that same day, and after banking hours, Duggan called at the office of Mills Tooke and asked Tooke whether, as an accommodation, he could cash the check. At that time the check bore Duggan's endorsement and also another endorsement which Duggan stated had been made by Bowen to whom the check was made payable. When Duggan called at Tooke's office, Bowen was sitting in the outer office, and, therefore, when Duggan asked Tooke to cash the check which was made payable to Bowen, Tooke took the check into the outer office and said to Bowen: "What's the matter Bowen, can't you get this check handled?" He did not actually exhibit the check to Bowen, though the record shows that he referred to it as a check for $300. Bowen answered that he couldn't "handle" it. Tooke, who was willing to accommodate Duggan, took the check to the Roosevelt Hotel where at his request, it was "cashed", and the proceeds given to Duggan.
About six weeks later, the Finance Company called Bowen's attention to the fact that he had not paid the first installment on his loan and then, for the first time, Bowen made the statement that he did not know that the loan had ever been consummated nor that Duggan had ever received the proceeds. He was told that the proceeds had been paid to Duggan by check payable *Page 638 
to Bowen, and endorsed by him. He challenged the endorsement, characterizing it as a forgery, and made affidavit to this effect.
In the meantime, the check had reached the bank and been honored and the amount thereof, $300, had been charged against the account of the Finance Company.
Because of the charge of Bowen that his purported endorsement was a forgery, the Finance Company called upon the bank to credit its account with the amount charged against it. The bank did this and called upon the Hotel for reimbursement. The Hotel acquiesced and then called upon Tooke, who, having paid the Hotel, now seeks reimbursement from Bowen and from the Finance Company, averring that, as a matter of fact, the endorsement of Bowen was genuine and that the check had been properly honored in the first instance.
Both defendants deny the genuineness of Bowen's endorsement. From a judgment below in favor of Tooke and against both Bowen and the Finance Company only the Finance Company has appealed.
Counsel now agree that the only question involved is one of fact. Did this check bear the genuine endorsement of Bowen? Bowen admits that when he applied for the loan he signed both the borrower's statement and the note, and it seems strange that having done so, he took no further interest in the proceeds of the loan. His explanation is that he knew that Duggan's credit was not good and that, therefore, he thought that the Finance Company had ultimately decided not to make the loan. And he says, too, in the second place, that the loan was being made entirely for Duggan's benefit and that, therefore, after signing the note, he had no further interest in the matter.
If he believed that the loan had never been consummated, it is strange that he did not request the return or the destruction of his note.
On the other hand, if it was understood that the proceeds of the loan, if made, would go to Duggan, it would indeed have been strange that Duggan would have forged Bowen's endorsement on the check. Why should he have done so when he knew that Bowen would have endorsed it on request?
Then, too, it is unbelievable that Bowen did not know that the $300 check to which Tooke referred in his outer office, was the check which had been issued by the Finance Company as the proceeds of the Bowen loan. Bowen says that he knew that Duggan's credit was not good, and that on that same day, and only a short time earlier, he had, himself, signed a note in order that Duggan might receive $300, and yet he says that when he saw Duggan trying to cash a check for $300 he did not know that that was the check which had been issued by the Finance Company as the proceeds of his note.
The record shows that Bowen and Duggan were in the habit of lounging in Tooke's office. Therefore, Duggan knew that it was possible, if not probable, that he might meet Bowen there. Under these facts, if he found it necessary to forge Bowen's endorsement in order to cash the check, surely the last place to which he would have taken it would have been Tooke's office, where he might be confronted by the very man whose endorsement he had forged.
While no handwriting expert testified in the case, there is evidence given by others, to some extent familiar with Bowen's signature. That evidence, while not conclusive preponderates in support of the contention that the endorsement is genuine.
It is interesting to note in connection with the testimony of a Mr. Brandin that only about ten days after the check had been cashed, he discussed with Bowen the fact that he, Bowen, had been "stuck" again by Duggan, and that Bowen, on that occasion, admitted that he seemed to have been "stuck" but said that he was going to wait a short time longer and would then, in some way, get the money out of Bowen. If Mr. Brandin's story is true and there is nothing in the record which seems to us to throw any doubt upon it, Bowen, at that time, must have known that the check had been cashed, and yet he says that he did not know until several weeks later that the loan had ever been consummated.
All of the circumstances convince us of the absolute falsity of Bowen's statement. The record shows, we think, conclusively that he knew that the check had been issued, that he actually endorsed it and that he knew that Duggan had obtained the money.
Plaintiff has answered the appeal and has prayed that he be awarded damages on the ground that the appeal is frivolous and was taken only for the purpose of delay. *Page 639 
We think that plaintiff is entitled to be awarded the damages prayed for.
It is therefore ordered, adjudged and decreed that the judgment appealed from be, and it is, affirmed with damages at 10%, all at the cost of defendant, Rimbolt Finance Service, Inc.
WESTERFIELD, J., absent, takes no part.
Affirmed.